UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| Mina KIM,<br><br>    *Plaintiff*<br><br>    v.<br><br>Michael CHERTOFF, Secretary of the United States Department of Homeland Security; Michael B. MUKASEY, Attorney General of the United States, U.S. Department of Justice; Emilio T. GONZALEZ, Director of the United States Citizenship and Immigration Services; **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;** Robert S. MUELLER, Director, FBI; **FEDERAL BUREAU OF INVESTIGATION,**<br><br>    *Defendants.* | 08 CV 0300<br>Docket No.: _____<br><br>Judge: _____<br><br>Immigration File:<br>*A94 875 975*<br><br>RECEIVED<br>JAN 14 2008<br>U.S.D.C. S.D. N.Y.<br>CASHIERS |

------------------------------------------------------------x

PLAINTIFF'S COMPLAINT
FOR WRIT IN THE NATURE OF MANDAMUS

    Plaintiff, Mina Kim, by and through her undersigned attorneys, commences this action against the above-named Defendants, and states as follows:

1. This action is brought against the Defendants to compel action on an application for lawful permanent resident status properly filed by Plaintiff, Mina Kim, based on an approved immigrant petition for alien worker filed on her behalf by her employer, Clifford Chance U.S. LLP. The application was filed and remains within the jurisdiction of the Defendants, who have improperly withheld action on said application to Plaintiff's detriment.

1

## PARTIES

2. ~~Plaintiff, Ms. Mina Kim, is a native and citizen of South Korea. She is currently a~~ resident and domiciliary of New York, New York, in New York County. She is also an attorney admitted to practice in the State of New York. Ms. Kim is the beneficiary of an approved I-140 Immigrant Petition for Alien Worker filed on her behalf by her employer, Clifford Chance U.S. LLP. She is also the beneficiary of a pending I-485 Application for Adjustment of Status to lawful permanent resident.

3. Defendant, Michael Chertoff, is the Secretary of the United States Department of Homeland Security, with responsibility for the administration of applicable laws and statutes governing immigration and naturalization. He is generally charged with enforcement of the Immigration and Nationality Act, and is further authorized to delegate such powers and authority to subordinate employees of the Department of Homeland Security. More specifically, the Secretary, is responsible for the adjudication of applications for adjustment of status filed pursuant to §245 of the Immigration and Nationality Act (INA), 8 USC §1255.

4. Defendant, Michael B. Mukasey, is Attorney General of the United States, and is the head of the United States Department of Justice, with responsibility for the administration of laws and statutes governing immigration and naturalization and ultimate responsibility for the Federal Bureau of Investigation.

5. Defendant, Emilio T. Gonzalez, is the director of USCIS, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include: adjudication of immigrant visa petitions and applications for adjustment of status; adjudication of naturalization petitions; adjudication of asylum and refugee applications; adjudications performed at the service centers, and all other adjudications performed by the INS.

6. Defendant, U.S. Citizenship and Immigration Services (formerly, the Immigration and Naturalization Service) is an agency of the federal government within the Department of Homeland Security (formerly, within the U.S. Department of Justice) and is responsible for the administration of laws and statutes governing immigration and naturalization.

7. Defendant, Robert S. Mueller, is the Director of the Federal Bureau of Investigation. He is responsible for conducting criminal record checks and name checks under the National Name Check Program, and other programs, which provides USCIS with information from the FBI database in response to USCIS requests.

8. Defendant, Federal Bureau of Investigation, is an agency of the U.S. Department of Justice charged with conducting certain background checks relating to aliens who are applying for certain benefits under U.S. immigration laws.

## JURISDICTION

9. Jurisdiction in this case is proper under 28 U.S.C. §§1331 and 1361, 5 U.S.C. §701 et. seq., and 28 U.S.C. §2201 et. seq. Relief is requested pursuant to said statutes. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and under 28 U.S.C. §1361, which provides the district court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." Further, the Declaratory Judgment Act, 28 U.S.C. §2201, provides that: "[i]n a case of actual controversy within its jurisdiction... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Review is also warranted and relief sought under the Administrative Procedure Act 5 U.S.C. §701 et seq., §706(1) and §555(b).

## VENUE

10. Venue properly lies within the Southern District of New York pursuant to 28 U.S.C. §1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where a Defendant in the action resides. Further, Plaintiff is a resident of New York, New York, within the geographic territory of the Southern District of New York.

## EAJA FEES

11. In connection with the claim for attorneys' fees and costs, under the Equal Access to Justice Act 28 U.S.C. §2412, Plaintiff seeks to recover costs and attorneys' fees incurred in bringing this action. Plaintiff has retained the law firm of Barst & Mukamal, LLP to represent her in this action. Plaintiff is obligated to pay reasonable attorneys' fees and costs incurred in the prosecution of this cause.

## EXHAUSTION OF REMEDIES

12. Plaintiff has exhausted her administrative remedies. Plaintiff has, through her attorneys, made numerous inquiries with defendants concerning the status of her application, all to no avail. No other administrative remedy is available to Plaintiff.

## FACTUAL ALLEGATIONS

13. Plaintiff, Mina Kim, is a native and citizen of South Korea. She is currently the beneficiary of a an approved I-140 Immigrant Petition for Alien Worker filed on her behalf by her employer, Clifford Chance U.S., LLP, and qualifying her as a member of the profession with an advanced degree or an alien of exceptional ability. She is also the beneficiary of a pending I-485 Application for Adjustment of Status to lawful permanent resident.

14. The I-140 petition was filed with Defendants on behalf of Plaintiff concurrently with her application to adjust status on June 13, 2006, along with all applicable filing fees. An application for employment authorization, including a filing fee, was also filed on that date.

15. The I-140 Petition was approved by Defendants on August 1, 2006.

16. The I-140 was filed based on an approved alien labor certification which was filed on May 22, 2006, and approved the following day on May 23, 2006, giving Plaintiff a priority date of May 22, 2006, which was current at the time of the filing of the I-140 petition and application for adjustment of status.

17. Thus, as of August 1, 2006, Plaintiff was the beneficiary of an approved immigrant petition and had an immigrant visa number immediately available to her, and there was no impediment, other than the processing of her application for adjustment of status by Defendants, to Plaintiff receiving permanent resident status as of that date.

18. On June 30, 2006, Plaintiff was scheduled for, and attended, a biometrics appointment in conjunction with her application for adjustment of status. Thus, as of that date, Defendants had in their possession and control Plaintiff's fingerprints, photograph, name, date of birth, place of birth and all other biographic information necessary to complete all applicable security checks.

19. On April 20, 2007, Plaintiff filed an application to renew her employment authorization, including a filing fee of $180. That application was approved on August 16, 2007, and granted Plaintiff authorization to work in the U.S. from August 11, 2007 until August 10, 2008, at which time she will have to again apply

4

to renew her employment authorization if her application for adjustment of status has not been approved.

20. On April 26, 2007, Plaintiff filed an application for a travel document that would allow her to travel outside the U.S. while her application is pending. This application was filed with the required $170 fee.

21. On May 21, 2007, Plaintiff was scheduled for, and attended, a second biometrics appointment so Defendants could update her fingerprints and other biometrics.

22. Because Plaintiff's application had now been pending over a year, Plaintiff and her counsel began to inquire with Defendants about the status of her application. Plaintiff and her attorneys have made numerous status inquiries in an attempt to secure adjudication of her adjustment application, all to no avail.

23. On May 25, 2007, Plaintiff made an inquiry with the USCIS customer service 800 number about her application. Plaintiff was informed that her application was outside of current processing times, and a formal status inquiry would be sent to Defendants for further review.

24. On June 5, 2007, Defendants issued a letter in response to the May 25, 2007 inquiry stating that, in fact, Plaintiff's application was not outside of current processing times, and Plaintiff should inquire again in the future.

25. On July 16, 2007, Defendant USCIS publicly posted a list of current processing times, indicating that applications such as Plaintiff's which had been filed on August 7, 2006 were currently being processed by Defendants, indicating that Plaintiff's application, which had been filed on June 13, 2006, was already two months behind current processing times, which were approximately ten and a half months.

26. On July 20, 2007, Plaintiff called Defendant USCIS's 800 number twice, and spoke to two different officers. Plaintiff was informed by both officers that a formal status inquiry could not be made in her case, even though it was outside of normal processing times, because 60 days had not elapsed since her last inquiry.

27. On August 9, 2007, another inquiry was made with the USCIS 800 number. Plaintiff was provided with no information other than that her case was pending. Despite the fact that more than 60 days had passed since a service inquiry was made on behalf of Plaintiff, no action was taken by Defendants.

28. On October 22, 2007, yet another inquiry was made via the 800 number. This time, Agent number 2651675 submitted a service inquiry into the status of Plaintiff's application. This inquiry was given referral number T1B295070264TSC.

29. On November 2, 2007, Plaintiff attended an InfoPass appointment with counsel at Defendant's 26 Federal Plaza, New York, New York office. Plaintiff was informed that her application remained pending at Defendant's Texas Service Center. No other information was given.

30. On December 3, 2007, Defendant USCIS issued a letter to Plaintiff in response to the service inquiry of October 22, 2007, stating that the processing of Plaintiff's application could not be completed because her background checks were pending. The letter advised Plaintiff to wait another six months and then inquire again.

31. On information and belief, Plaintiff has no criminal record anywhere in the world and has no history of violations of U.S. Immigration laws.

32. Defendants have sufficient information to determine Plaintiff's eligibility for adjustment of status pursuant to applicable law and regulations. To date, said application has not been adjudicated.

## CLAIMS

33. Defendants' refusal to act in this case is, as a matter of law, arbitrary and not in accordance with the law. Defendants willfully, and unreasonably, have delayed in and have refused to, adjudicate Plaintiff's application, thereby depriving her of the right to a decision on her status and the peace of mind to which Plaintiff is entitled.

34. Plaintiff is, and was at the time of filing and all times since, fully eligible for adjustment of status.

35. Plaintiff has fully complied with all applicable laws, regulations and procedures, and has provided Defendants with all information and documents required or requested in conjunction with her application for adjustment of status.

36. Plaintiff has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law and adjudicate her application.

   a. Plaintiff has been damaged in that her employment authorization is tied to her status as an applicant for permanent residency, and is limited to increments not to exceed one year. 8 CFR §274a.12(c)(9). Therefore, Plaintiff has been forced to repeatedly apply and pay for extensions of employment authorization, to the continued inconvenience and harassment of Plaintiff and her employer, which is required by law to continually insure her work eligibility. INA §274A(a)(2), 8 USC §1324a(a)(2).

   b. Plaintiff has been damaged in that her ability to travel is tied to her status as an applicant for permanent residency, and is limited to increments not

to exceed one year. Therefore, Plaintiff has been forced to apply and pay for travel documents, to the continued inconvenience and harassment of Plaintiff.

 c. Plaintiff has been further damaged by simply being deprived of the status of lawful permanent resident during the pendency of her application.

 d. Plaintiff has also been damaged by her inability to accrue time toward naturalization as U.S. citizen.

 e. Plaintiff has been denied the peace of mind that comes from having a decision made on her application and knowing whether she will in fact be able to remain in the U.S. or whether she will be uprooted and have to relocate on short notice to another country.

37. Plaintiff has a statutory right to the adjudication of her I-485 application pursuant to INA § 245 (8 U.S.C. § 1255).

38. Defendants are required by their own regulations to adjudicate and issue a written decision on Plaintiff's I-485 Application. *See* 8 C.F.R. § 103.2(b)(19); 8 C.F.R. § 245.2(a)(5) (stating an applicant for adjustment "shall" be notified of the decision on that application, indicating that a decision is mandatory); *see also* 8 C.F.R. § 245.6 (stating each applicant for adjustment of status "shall" be interviewed, indicating that every application must be adjudicated). *See Iddir v. INS*, 166 F.Supp. 2D 1250, 1258 (N.D. Ill. 2001).

39. Plaintiff's payment of fees and Defendants' acceptance of those fees for processing Plaintiff's application for adjustment of status represents a *quid pro quo* whereby Defendants are accepting a fee in exchange for providing a service- namely the processing and adjudication of Plaintiff's application.

40. In the process of adjudicating an I-485 application for adjustment of status, Defendants are required to complete the specified security checks.

41. According to a report published by one of Defendants' agencies, the FBI name check is concluded within one month for 94% of applicants, and within six months for 99% of applicants. All other security checks performed in conjunction with Defendants' adjudication of an application or petition generally take less than a month to complete, and some take as little as a day or two. *See* Office of the Inspector General, "A Review of U.S. Citizenship and Immigration Service's Alien Security Checks," November, 2005; USCIS Fact Sheet "Immigration Security Checks- How and Why the Process Works," April 25, 2006.

42. Defendants USCIS and the FBI are administrative agencies subject to 5 U.S.C. § 555(b), which provides "[w]ith due regard for the convenience and necessity of

7

the parties or their representatives and **within a reasonable time**, each agency **shall** proceed to conclude a matter presented to it." (Emphasis added).

43. Completing security checks and adjudicating applications for adjustment of status are purely routine and ministerial duties performed on a daily basis by Defendants.

44. Except under very specific provisions of law that are not applicable here, Defendants lack the legal authority or discretion to abstain from processing applications for adjustment of status or completing security checks.

45. Thus the completion of security checks and adjudication of applications for adjustment of status are clearly subject to the requirements of 5 U.S.C. § 555(b), and Defendants have a legal duty to complete them within a reasonable time.

46. A delay of more than six months in completing the security checks necessary for Plaintiff's application is *per se* unreasonable. A delay of more than a year, as Defendants claim has occurred in the instant case, is completely unjustifiable. Further, a delay in processing Plaintiff's application for adjustment of status that is almost twice the normal processing time is also unreasonable.

47. Because Defendants have a purely ministerial duty under the law to complete security checks and adjudicate Plaintiff's application for adjustment of status within a reasonable time, and have utterly failed, or refused, to do so, a Writ of Mandamus is proper to compel Defendants to perform their duty to adjudicate Plaintiff's application to avoid further harm to Plaintiff.

**PRAYER FOR RELIEF**

48. WHEREFORE, in view of the arguments and authority noted herein, Plaintiff respectfully prays that the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order:

   a. granting Plaintiff a Writ of Mandamus requiring Defendants to complete security checks and adjudicate Plaintiff's application for adjustment of status within 90 days;
   b. awarding Plaintiff reasonable attorney's fees; and
   c. granting such other relief at law and in equity as justice may require.
   d. It is further requested that the Court retain jurisdiction over this matter to ensure Defendants' compliance with this Court's order.

Respectfully submitted,

Daniel B. Lundy, Esq.
Barst & Mukamal LLP